Victor L. Prial (VP-1101)
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, New York 10166
(212) 309-1000
vprial@hunton.com

-and-

A. Neal Barkus (*to be admitted pro hac vice*)
Grace B. Culley (*to be admitted pro hac vice*)
HUNTON & WILLIAMS LLP
1900 K Street, NW
Washington, D.C. 20006
(202) 955-1500
nbarkus@hunton.com
gculley@hunton.com

*Attorneys for Plaintiff Andre Torres*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

ANDRE TORRES

                Plaintiff,

     - against -

HARRIS PUBLICATIONS, INC.

                Defendant.

------------------------------x

Index No. _____

**COMPLAINT**

Jury Trial Demanded



06 CV 4198 — JUDGE WOOD

RECEIVED JUN 02 2006 U.S.D.C. S.D.N.Y. CASHIERS

## COMPLAINT

Plaintiff Andre Torres, by and through his attorneys, Hunton & Williams LLP, complains and alleges as follows:

## INTRODUCTION

1. In this action, Plaintiff seeks declaratory, injunctive and monetary relief based upon Defendant's violations of Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), 42 U.S.C. § 2000e, *et. seq.*, the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended, the New York Human Rights Law, New York Executive Law § 290 *et seq.* ("NYHRL"), and the New York City Human Rights Law ("City HRL"), New York City Administrative Code, § 8-101, *et seq.*

## JURISDICTION & VENUE

2. This Court has jurisdiction over all claims in this action pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331, 1337, 1343 and 1367. This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b)(2) because the unlawful conduct complained of occurred within New York, New York.

4. This Court has the power to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5. Plaintiff filed a timely charge of discrimination with the U.S. Equal Employment Opportunity Commission and brings this action within ninety (90) days of receipt of the EEOC's March 8, 2006 Notice of Right to Sue.

6. Pursuant to City HRL § 8-502(c), Plaintiff will serve a copy of this Complaint on the New York City Commission on Human Rights and Corporation Counsel within ten (10) days of commencing this action.

## PARTIES

### Plaintiff

7. Plaintiff Andre Torres is, and was at all times relevant to the allegations in this Complaint, a resident of the State of New York, residing in Kings County, New York.

8. From in or around January 2004 to on or around April 27, 2005, Plaintiff was employed by Defendant as Editor-in-Chief of Defendant's publication, *Scratch* magazine, with offices located at 1115 Broadway, New York, New York 10016-3450.

9. At all times relevant to the allegations in this Complaint, Plaintiff was an "employee" within the meaning of 42 U.S.C. § 2000e(f) and a "person" within the meaning of 42 U.S.C. § 1981(a), NYSHRL § 292(1) and City HRL § 8-102(1).

### Defendant

10. Defendant Harris Publications, Inc. is a domestic business corporation authorized to do business in the State of New York with a primary place of business at 1115 Broadway, New York, New York 10016-3450.

11. At all times relevant to the allegations in this Complaint, Defendant was an "employer" within the meaning of 42 U.S.C. § 2000(e)(b), NYSHRL § 292(5), and City HRL § 8-102(5) and a "person" within the meaning of NYSHRL § 292(1) and City HRL § 8-102(1).

## FACTS

12. Plaintiff is an African American male.

13. Prior to his employment with Defendant, Plaintiff was founder, Editor-In-Chief, and Publisher of *Wax Poetics*, a bi-monthly magazine focused on all aspects of hip-hop production, record collection and musical history. Founded in 2001, *Wax Poetics* now has a circulation of 64,500 readers and is distributed internationally at retailers such as Barnes and

Noble and Tower Records. While working at *Wax Poetics*, Plaintiff was responsible for handling editorial duties -- including, but not limited to, writing articles, setting up interviews, assigning articles to writers, editing all articles, layout of articles, finalizing all cover images and titles -- as well as managing all business aspects of publishing the magazine, such as coordinating with printers, distributors and retailers.

14. In or around January 2004, Plaintiff was recruited and hired by Defendant as Editor-in-Chief of its new, quarterly publication, *Scratch*, a magazine dedicated to hip-hop culture and music.

15. Plaintiff's direct supervisors at *Scratch* were Publisher Dennis Page and Creative Director Evan Gubernick. Some of his other superiors included, but were not limited to, Editorial Director Tony Gervino and Chief Financial Officer Warren Sherman. Messrs. Page, Gubernick, Gervino, and Sherman are white males.

16. As Editor-in-Chief of *Scratch*, Plaintiff was responsible for selecting the content, editorial tone, all section titles, all column content, and managing all in-house editorial teams as well as all freelance writers.

17. In addition to his duties as Editor-in-Chief, Plaintiff voluntarily assumed additional responsibilities, including, but not limited to, involvement in the day-to-day affairs of *Scratch*, acting as managing editor of the magazine, maintaining relationships with artists' publicists and management, and attending photo shoots of featured artists.

18. During the time he was Editor-in-Chief of *Scratch*, some of Plaintiff's work on the magazine specifically included, but was not limited to:

    a. Selecting the subject matter to be featured in each publication;

    b. Selecting every "cover" subject for each publication;

    c. Selecting every featured artist to be interviewed;

    d.    Assigning staff writers to compose the particular articles;

    e.    Managing and setting deadlines for the editorial team;

    f.    Following up with staff writers to ensure compliance with deadlines;

    g.    Editing all of the content for each publication;

    h.    Fostering relationships with artists' publicists;

    i.    Scheduling interviews and photo shoots for featured artists;

    j.    Interviewing and attending photo shoots of featured artists;

    k.    Working with the art director to determine proper layouts;

19. At all times while Plaintiff was employed with Defendant, he maintained an exemplary employment record.

20. At all times while Plaintiff was employed with Defendant, *Scratch* never missed a printing deadline.

21. Between the date of Plaintiff's hire and in or around April 2005, Defendant consistently praised Plaintiff's excellent work on *Scratch*. For example, because of Plaintiff's favorable reputation in the hip-hop community through his work at *Wax Poetics*, he was given access to acclaimed rap-artist and producer "Dr. Dre" for an exclusive interview for the first issue of *Scratch* in May 2004. Mr. Page complimented Plaintiff for this achievement and told him that securing Dr. Dre for *Scratch*'s first cover feature was equivalent to "getting Michael Jordan for the first cover of *Slam* magazine," a basketball publication owned by Defendant.

22. Messrs. Page and Gubernick also told Plaintiff that he had produced the best magazine Defendant had ever published and that he had given them a better magazine than they had hoped for.

23. Upon information and belief, Defendant did not hire or conduct market research or focus groups before launching *Scratch* or at any time while Plaintiff was Editor-in-Chief of

the magazine. Upon further information and belief, Defendant over-published the number of issues of *Scratch* while Plaintiff was Editor-in-Chief. Plaintiff had cautioned Messrs. Page and Gervino on this point and expressed concern about inflated and inaccurate circulation figures they had provided to advertisers.

24.  Upon information and belief, Defendant also over-published the number of issues of *Striker* and *Fuego*, two publications which were started approximately around the same time as *Scratch*. Upon further information and belief, both *Striker* and *Fuego* folded after their first and second issues, respectively.

25.  On or around August or September 2004, Messrs. Page and Gervino told Plaintiff that although sales of *Scratch* were lower than they had hoped, and in fact such circulation was lower than they had falsely claimed in reports to advertisers, Plaintiff was "doing a good job" and that he had produced a "great magazine."

26.  Despite seeking to reach African-American readers, Defendant privately demeaned and belittled *Scratch*'s minority client base as well as the client base of Defendant's other minority-based magazines, including XXL Magazine. Furthermore, Defendant's minority employees were forced to work in cramped, oppressive conditions, while white employees were not. Furthermore, Plaintiff believed that Defendant was underpaying him and its other minority employees, but not white employees.

27.  On or around April 13, 2005, Plaintiff approached Mr. Page to discuss a previously agreed salary increase. Mr. Page, however, refused to grant Plaintiff his scheduled raise. When Plaintiff asked him whether there was another way he could earn more money, such as through advertising or leave-time to work at *Wax Poetics*, Mr. Page made offensive remarks, for example, that Plaintiff could only find another job doing manual labor. In response, and in

response to his belief that the Defendant provided lower pay and inferior working conditions to minority employees, Plaintiff complained to Mr. Page that he and Defendant had created a racially toxic and oppressive workplace for Plaintiff and other minority employees. Later that same day, Plaintiff met with Mr. Gervino and also complained to him about Defendant's racially toxic and oppressive work environment.

28. The next day, on or around April 14, 2005, Plaintiff was told by Mr. Page that he was a "trouble maker who is going around throwing rocks."

29. Within less than two weeks after complaining to Defendant, Defendant terminated Plaintiff despite his excellent employment record.

## COUNT I: RETALIATION IN VIOLATION OF TITLE VII

30. Plaintiff repeats and realleges each and every allegation contained herein.

31. Defendant retaliated against Plaintiff by terminating his employment on the basis of his oral complaints to Defendant regarding the racially discriminatory treatment to which Plaintiff and his minority co-workers were subjected. Defendant's stated reasons for terminating Plaintiff were pretextual.

32. As a proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, and employment benefits.

33. As a further proximate cause of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

34. Plaintiff is entitled to an award of punitive damages because Defendant's unlawful actions were in conscious and malicious disregard of his protected rights.

## COUNT II: RETALIATION IN VIOLATION OF 42 U.S.C. §1981

35.     Plaintiff repeats and realleges each and every allegation contained herein.

36.     Defendant retaliated against Plaintiff by terminating his employment on the basis of his oral complaints to Defendant regarding the discriminatory treatment to which Plaintiff and his minority co-workers were subjected. Defendant's stated reasons for terminating Plaintiff were pretextual.

37.     As a proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, and employment benefits.

38.     As a further proximate cause of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

39.     Plaintiff is entitled to an award of punitive damages because Defendant's unlawful actions were in conscious and malicious disregard of his protected rights.

## COUNT III: RETALIATION IN VIOLATION OF NYHRL

40.     Plaintiff repeats and realleges each and every allegation contained herein.

41.     Defendant retaliated against Plaintiff by terminating his employment on the basis of his oral complaints to Defendant regarding the discriminatory treatment to which Plaintiff and his minority co-workers were subjected in violation of NYHRL §§ 296(1)(e) and (7). Defendant's stated reasons for terminating Plaintiff were pretextual.

42.     As a proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, and employment benefits.

43. As a further proximate cause of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

44. Plaintiff is entitled to an award of punitive damages because Defendant's unlawful actions were in conscious and malicious disregard of his protected rights.

### COUNT IV: RETALIATION IN VIOLATION OF CITY HRL

45. Plaintiff repeats and realleges each and every allegation contained herein.

46. Defendant retaliated against Plaintiff by terminating his employment on the basis of his oral complaints to Defendant regarding the discriminatory treatment to which Plaintiff and his minority co-workers were subjected in violation of the City HRL, § 8-107(7). Defendant's stated reasons for terminating Plaintiff were pretextual.

47. As a proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, and employment benefits.

48. As a further proximate cause of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

49. Plaintiff is entitled to an award of punitive damages because Defendant's unlawful actions were in conscious and malicious disregard of his protected rights.

### DEMAND FOR JURY TRIAL

50. Plaintiff repeats and realleges each and every allegation contained herein.

51. Pursuant to Federal Rule of Civil Procedure 38 (b), Plaintiff demands a trial by jury.

**WHEREFORE**, as a result of the unlawful and malicious conduct of the Defendant, Plaintiff respectfully requests that the Court enter a judgment:

A. Declaring that Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.*, The Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended, and the New York Human Rights Law, New York Executive Law § 290 *et seq.*;

B. Enjoining Harris from retaliating against Plaintiff and others who complain about unlawful discrimination;

C. Ordering Defendant to expunge from Plaintiff's personnel record any and all memoranda, statements, correspondence, or other documents reflecting his unlawful termination from *Scratch* magazine as well as any and all memoranda, statements, correspondence, or other documents containing information or opinions critical of Plaintiff's work while Editor-in-Chief of *Scratch* magazine;

D. Awarding Plaintiff actual damages for all earnings, including past and future wages, and other employment benefits Plaintiff would have received but for Defendant's unlawful termination of Plaintiff, plus pre-judgment and post-judgment interest;

E. Awarding Plaintiff compensatory damages for mental anguish and humiliation;

F. Awarding Plaintiff punitive damages;

  G. Awarding Plaintiff's costs, attorneys' fees, and expenses associated with this action;

  H. Granting such other and further relief this Court deems necessary and proper.

Dated: June 2, 2006
   New York, New York

              HUNTON & WILLIAMS LLP

         By: _____
              Victor L. Prial (VP-1101)
              200 Park Avenue
              New York, New York 10166
              (212) 309-1000
              vprial@hunton.com

              -and-

              A. Neal Barkus (*to be admitted pro hac vice*)
              Grace B. Culley (*to be admitted pro hac vice*)
              1900 K Street, NW
              Washington, D.C. 20006
              (202) 955-1500
              nbarkus@hunton.com
              gculley@hunton.com

              *Attorneys for Plaintiff Andre Torres*